KITCHENS, Justice,
concurring in part and dissenting in part.
¶ 36. I agree with the majority’s determination that the chancellor did not err in refusing to terminate the father’s parental rights, and our analyses of this issue do not differ. However, I respectfully dissent from the majority’s conclusion that the father abandoned the child and is not entitled, therefore, to the natural-parent presumption, as such a finding requires a factual determination, which is to be made by a chancellor and given great deference by this Court.
¶ 37. This case turns on the standard of review, which appropriately defines and limits the parameters of our analysis. In child-custody matters, “review by this Court is ‘quite limited in that the Chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this Court to reverse.’ ” In re Custody of M.A.G., 859 So.2d 1001, 1004 (Miss.2003) (quoting M.C.M.J. v. C.E.J., 715 So.2d 774, 776 (Miss.1998)). “Where a Chancellor has applied the correct legal standard and made findings of fact which are supported by substantial evidence, this Court will not reverse her decision.” Id (citing Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss.1996)). “Under this standard, the Court asks not how it would have decided the case ab initio, but whether there is credible proof to support the chancellor’s findings of fact by clear and convincing evidence.” In re Adoption of Minor Child, 931 So.2d 566, 571 (Miss.2006) (citing S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1080 (Miss.2000)).
¶ 38. In its opinion, the majority has not only failed to cite the standard of review, it also has failed to adhere to it. Simply pronouncing that the chancellor erred does not, in my view, justify reversal of a chancellor. This Court has stated that:
We may not always agree with a chancellor’s decision as to whether the best interests of a child have been met, especially when we must review that decision by reading volumes of documents rather than through personal interaction with the parties before us. However, in custody cases, we are bound by the limits of our standard of review and may reverse only when the decision of the trial court was manifestly wrong, clearly erroneous, or an erroneous legal standard was employed.
K.D.F. v. J.L.E., 933 So.2d 971, 980 (Miss.2006) (quoting Hensarling v. Hensarling, 824 So.2d 583, 586-87 (Miss.2002)).
¶ 39. Here, the Pendletons were given fair opportunity to adduce evidence in an *435 effort to overcome the venerable presumption that favored the child’s biological father by proving that the father had abandoned or deserted the child. They tried mightily to do that; however, before the chancellor was credible testimony, supported by documentation, that the mother never stayed in one place for very long, and that when she moved, she took the child with her. The father testified that when the mother was on the move, as was frequently the case, she could never be reached by calling the same telephone number twice. In fact, when he was able to contact her, his telephone records entered into evidence showed that the numbers at which the father was able to speak with the mother were listed in Meridian, Hattiesburg, and Jackson. He testified that these were among the circumstances that inhibited his contacting the child between 2004 and 2006, and that he did not know where to look for his son or where to send gifts or child-support payments.
¶ 40. When considering these facts, along with the father’s testimony that, when he called the Pendletons, they informed him that the mother and the child did not live with them, I cannot say that the chancellor was manifestly wrong in finding that the father did not abandon or desert his son. Similarly, the guardian ad litem, who investigated the case over the course of fourteen months, did not say that the father had abandoned or deserted the child. Instead, the guardian ad litem testified that “[the mother] left; [the father] could not find her; [the father] could not find the child.”
¶41. In sum, the chancellor weighed the evidence and found that the Pendle-tons had failed to rebut the presumption that gives a natural parent the paramount right to custody of his own child. Given the applicable standard of review and the evidence before the chancellor, I would affirm the chancellor’s judgment that custody of this child be granted to his natural father. Therefore, I would affirm.